IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No: BK 23-80946 |
| | ) | |
| MICHAEL HUDSON and KELLY HUDSON, | ) ) | Chapter 13 |
| | ) | |
| Debtors. | ) ) | |

**Order Granting Objection to Exemption**

This matter is before the court on the Chapter 13 Trustee's objection to claim of exemption and the response by the debtors (Doc. #14; Doc. #16). A hearing was held on January 22, 2024. Jessie C. Polson appeared for the debtors and Thomas P. Kenney appeared on behalf of the Chapter 13 trustee. Erin McCartney, the Chapter 13 trustee also appeared.

The Chapter 13 trustee objected to the homestead exemption claimed by the debtors Michael and Kelly Hudson. Each debtor claimed a $60,000 homestead exemption in their family home for a total of $120,000 in a single parcel of property. Because a married couple can only collectively claim a single exemption in property and because the exemption is limited to $60,000, the objection is sustained.[1]

The debtors assert as a result of LB 964, they can each separately claim a $60,000 homestead exemption in one parcel of property. LB 964 was signed into law in 2014 and amended § 40-102 of Nebraska's homestead act. Section 40-102 delineates "which property may be selected as the homestead" and "defines the persons who are entitled to make the selection." *Landon v. Pettijohn*, 438 N.W.2d 757, 760 (Neb. 1989). While LB 964 clearly expanded the persons entitled to claim the exemption to include individuals, the issue is whether it allows a married couple to separately claim two exemptions in one parcel of property. LB 964 revised § 40-102 as follows:

> (1) If the claimant is married, the homestead may be selected from the separate property of the ~~husband~~ claimant or, with the consent of the ~~wife from her separate property.~~ claimant's spouse, from the separate property of the claimant's spouse.

---

[1] This decision was reviewed by the other bankruptcy judge in this district, the Honorable Thomas L. Saladino, who concurs in the result.

> (2) ~~When~~ If the claimant is not married~~, but is the head of a family within the meaning of section 40-115 or is age sixty-five or older~~, the homestead may be selected from any of his or her property.

2014 Neb. Laws LB 964. The debtors assert the now amended statute protects an individual claimant, instead of a family or a head of a family. They assert each individual claimant can therefore separately claim the exemption in one parcel of property. But to understand § 40-102, and the effect of LB 964, one must understand homesteads in Nebraska and the evolution of Nebraska's homestead act.

"[T]he purpose of the Legislature in enacting the homestead statutes was to protect the debtor and the debtor's family residing in a home from the forced sale of the home on execution or attachment." *Chambers v. Bringenberg*, 963 N.W.2d 37, 54 (Neb. 2021). A "homestead" itself is a parcel of property.

> In its inception, *a homestead is a parcel of land on which the family resides, and which is to them a home*. It is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it. When these things exist bona fide, the essential elements of the homestead right exist, and of which the persons entitled to it cannot be divested by acts or inferences beyond their volition.

*Gallagher v. Smiley*, 44 N.W. 187, 189 (Neb. 1889). Once a homestead is acquired, the land itself becomes "imbued" with the character of a homestead. *Berggren v. Bliss*, 241 N.W. 544, 545 (Neb. 1932) (holding the fact the husband conveyed land to his wife "does not constitute an abandonment of the homestead character with which the land was imbued.").

Selection of the homestead is through Nebraska's homestead act. The framework for the current homestead act dates to 1879. The act, even in its present form, does not define a "homestead". Even in the first homestead act in territorial Nebraska:

> There was no attempt to define "homestead." The word was used in its general acceptation—the home of the family, the common–law castle of the citizen. The question of value did not enter into its description. The poor and the rich were treated alike. No one was to be deprived of his home.

*Meisner v. Hill*, 138 N.W. 583, 584 (Neb. 1912).

As indicated in *Meisner*, the first homestead act in territorial Nebraska did not contain a dollar limitation. *Id.* at 585. The dollar limitation was added in 1875. *Id.* The 1879 act retained a maximum value of the homestead, which was stated in the first section of the act:

> A homestead not exceeding in value $2,000, consisting of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated … shall be exempt from judgment liens and from execution or forced sale, except as in this chapter provided.

Neb. Comp. Stat. c. 36 § 1 (2d ed. 1881).

The inclusion of a dollar limit did not change the nature of a homestead. *Meisner*, 138 N.W. at 585 ("This section does not attempt to define what a homestead shall be. Its object is to continue the exemption from the claims of creditors, and limit that exemption."). In *Meisner* the Nebraska Supreme Court asked:

> What is a "homestead"? Is it the present worth of the exemption which the statute allows against the claims of creditors, or is it the family home? Section 6 of the present Homestead Law (Comp. St. 1911, c. 36) requires a creditor when he seeks to subject a homestead to the payment of his claim to take an oath "that the value of the homestead exceeds the amount of the homestead exemption." *This is a legislative declaration that the homestead is something more than, and different from, the $2,000 exemption against the claims of creditors*. This distinction plainly runs through all of our legislation. It is emphatically presented in substantially the same words in sections 8 and 11 of the act.

*Id. at 584* (emphasis added); *see also* 40 C.J.S. Homesteads § 1 ("As used in the various statutes relating to homestead exemptions, the term 'homestead' generally means not only the property occupied as a home but also the right to have it exempted from levy and forced sale.").

In the 1879 act, to obtain the protections a homestead offered, the homestead had to be claimed. Only the "head of a family" could claim it.

> When an execution for the enforcement of a judgment obtained in a case not within the classes enumerated in section 3, is levied upon the lands or tenements of a head of a family, **such head of a family may notify the officer** at the time of making the levy of what he regards as his homestead, with a description thereof, within the limits above prescribed, and the remainder shall be subject to such levy, except as otherwise provided in this chapter.

Neb. Comp. Stat. c. 36 § 5 (2d ed. 1881).

Under the 1879 act, the head of a family was "The *husband*, when the claimant is a married person." § 15 (emphasis added). A married woman was not statutorily a

head of the family and could not claim the exemption. A woman could claim the exemption as head of the family only if she was not married. *Id.*

> While our statute does designate the husband, when the parties are married, as the head of the family, it does not necessarily follow that he is thereby given exclusive dominion and control thereover, but it is evidently intended merely that, in case an execution is levied on such homestead, such head of a family may take the steps designated in section 5 to protect the same from forced sale.

*Klamp v. Klamp*, 79 N.W. 735, 737 (Neb. 1899); s*ee also* 40 Am. Jur. 2d Homestead § 16 ("The person who is entitled to set up the homestead right within the homestead exemption is often described as the 'head' of a family or household. Under such provisions, if the claimant is not shown to be the head of a family, a claim of homestead is not sustainable.").

The 1879 act was a step backwards for married women in the exemption-claiming process. Earlier acts allowed either spouse to claim the homestead if the claimant owned the property.

> In 1866, provision was made for the selection of a homestead 'by the owner' of the land.

> In 1871, the Legislature provided that a married woman had 'separate property' rights in real and personal property. As amended, this act is now section 42–201, R.S.1943, and following sections. By act of the Legislature approved February 25, 1875, the Legislature repealed section 525 of the Code of Civil Procedure and enacted a new act whereby the words 'to be selected by the owner thereof' were omitted, and providing that on application 'of the debtor, or his wife,' the homestead should be set off to the debtor.

> In 1877, the Legislature passed an act to exempt homesteads from judicial sale. This act provided that the homestead 'whether owned by the husband or wife' was exempt, and that the '*owner, or the husband or wife*' could select it. It contained additional references to the 'husband or wife.'

> By the act of 1879, the acts of 1875 and 1877 were repealed.

*Edgerton v. Hamilton Cnty.*, 36 N.W.2d 258, 260–61 (Neb. 1949) (emphasis added) (citations omitted).

Because the 1879 act only allowed the husband to claim the homestead, a mechanism was required if only the wife owned the property. The mechanism is now part of § 40-102. In 1879 the applicable section provided:

> If the claimant be married the homestead may be selected from the separate property of the husband, or with the consent of the wife from her separate property. When the claimant is not married but is the head of a family, within the meaning of section fifteen, the homestead may be selected from any of his or her property.

Neb. Comp. Stat. c. 36 § 2 (2d ed. 1881). The purpose of the section was "clear". The family home was protected regardless of which spouse owned it or how it was titled.

> It seems clear from a review of these previous acts that by the use of the language here involved the Legislature intended to make certain that the homestead could be selected, as it said, from the separate property of the husband or, with her consent, from the separate property of the wife in the sense of ownership in either the one or the other and not in the sense of the character of the title by which the ownership was acquired.

*Edgerton*, 36 N.W.2d at 261. Secondarily, consent protected the wife from the husband exerting "dominion and control" over the homestead to the detriment of the wife. *See, e.g., Klamp*, 79 N.W. at 737 (holding husband could not in a divorce proceeding claim a homestead for himself from the separate property of the wife to "drive and exclude her from it.").

Nebraska's homestead act was amended twice in the last 15 years. In 2010 it was amended to allow not just families, but also individuals over age 65 to claim a homestead. *See* 2010 Neb. Laws LB 907. Later the legislature deemed it unfair all individuals could not claim the exemption. To correct this unfairness, § 40-102 was amended again in 2014, through LB 964, to allow any individual to claim the homestead regardless of age or head of a family status.

LB 964 was introduced by Senator Lydia Brasch, who did so at the request of bankruptcy attorneys. Despite the long history of protecting only a family, the senator testified she found it "difficult to understand why a never-married person does not qualify for this exemption." *See* Transcript of Hearing on LB 964 before the Judiciary Comm., 103d Leg., 2d Sess. (Feb. 7, 2014), at 30 (Fil. No. 26). She further testified:

> [LB 964] allows for equal protection under the law. Present homestead exemption law in Nebraska rightly favors individuals 65 and older and those either married or once married. Single people are singled out. Truly, they work just as hard as those who qualify for the exemption. They have dreams

> of owning and keeping a home, just as those who currently qualify. They may make poor financial decisions similar to those who are married, once married, or over 65. But they should not be treated differently because of their age or marital status. They should be equally afforded the protection that bankruptcy allows.

*Id*.

When introduced, LB 964 removed the reference to head of a family only from § 40-102. The definition of head of a family and references to it in other parts of the act were retained. This oversight was cleaned up. Subsequent amendments to LB 964 removed all references to "head of a family" from the act. *See* Neb. Legis. J., 2014 Reg. Sess. No. 52, at 1281.

Regarding § 40-102's change from "husband" and "wife" to "claimant" and "claimant's spouse", Senator Brasch testified the original language was patriarchal. She testified this change in LB964 simply "cleans up the language in section 40-102(1) that has been the same since the law was initially created in 1879 and it makes the language gender neutral." Transcript of Floor Debate, 103d Legis., 2d Session 66 (March 24, 2014).

## Conclusions of Law

The debtors concede the homestead act allowed a married couple only one exemption before LB 964 was signed into law. But they assert LB 964's amendment of § 40-102, which removed the "head of a family" language, shifted the focus and protections to an individual "claimant". They reason it now allows each spouse to claim a separate homestead in a single parcel of property. To iterate, LB 964 modified both sentences in § 40-102:

> (1) If the claimant is married, the homestead may be selected from the separate property of the ~~husband~~ claimant or, with the consent of the ~~wife from her separate property.~~ claimant's spouse, from the separate property of the claimant's spouse.

> (2) ~~When~~ If the claimant is not married~~, but is the head of a family within the meaning of section 40-115 or is age sixty-five or older~~, the homestead may be selected from any of his or her property.

2014 Neb. Laws LB 964.

LB 964 did not go as far as the debtor contends. The head of a family requirement was only in subsection (2) of § 40-102, which subsection never applied to a married couple. Removal of the head of a family from subsection (2) did not change the law

applicable to married couples who are, and were, governed only by subsection (1). LB 964's changes to subsection (1) made the statute gender neutral. In making the statute gender neutral, the husband no longer is the only one who can claim the homestead. The amendment makes either spouse "entitled to make the selection." *Landon*, 438 N.W.2d 757 at 760.

But LB 964 did not change the fact the claiming spouse makes the selection *for the married couple*. This is apparent for several reasons. Section 40-102 continues to differentiate between married couples and unmarried individuals. It retains the consent language. The balance of the act remains unchanged and continues to differentiate between a homestead and the value of the exemption. The homestead continues to be in property, not in an "interest" in property. Finally, and perhaps most importantly, the LB 964 did not change long-standing Nebraska law holding one parcel of property cannot sustain two homesteads.

Section 40-102 continues to differentiate between an individual claimant and a married claimant. The debtors' construction impermissibly ignores the differentiation. "In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." *Sanitary & Imp. Dist. No. 1 of Fillmore Cnty., Neb. v. Nebraska Pub. Power Dist.*, 573 N.W.2d 460, 465 (Neb. 1998). The court must "attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute." *Id*. If the exemption is a personal exemption for all individuals, why does the statute still differentiate between a claimant who is married and a claimant who is an individual? If both can claim the exemption in one parcel of property, marital status is irrelevant. If both can claim the exemption in one parcel, only subsection (2) is necessary.

The statute also retains the "consent" and "separate property" language. Under the debtors' construction, consent becomes irrelevant. If both spouses can each separately claim two exemptions in one parcel of property, there is no need to make a claim from the spouse's separate property. The spouse can claim the exemption on his or her own. The consent language only makes sense if the homestead remains in a singular family home, which might still be owned by one of the two spouses.

The homestead act still maintains separate references to a homestead and the homestead exemption. The claimant does not *claim the exemption*. The claimant *selects the homestead. See* Neb. Rev. Stat. § 40-102. The homestead then obtains the benefit of the exempt status. After the homestead is selected, a court must "determine whether or not such land is subject to the *homestead exemption*". *See* § 40-108 (emphasis added). If the land qualifies as a homestead, the court must determine the *extent and value of the homestead* and compare it to the *value of the*

*homestead exemption*. The value of the homestead exemption is limited to $60,000 under the first section of the act, which section, aside from the exemption amount, remains strikingly similar to the section one of original 1879 act:

> A *homestead* not exceeding sixty thousand dollars in value *shall consist of the dwelling house* in which the claimant resides, its appurtenances, and the land on which the same is situated, not exceeding one hundred and sixty acres of land, to be selected by the owner, and not in any incorporated city or village, or, at the option of the claimant, a quantity of contiguous land not exceeding two lots within any incorporated city or village, and shall be exempt from judgment liens and from execution or forced sale, except as provided in sections 40-101 to 40-116.

§ 40-101 (emphasis added).

In addition to §§ 40-101 and -108 discussed above, the bulk of the homestead act remains unchanged after LB 964. As the Nebraska Supreme Court recognized in *Meisner* in 1912, the bulk of the act is a "legislative declaration that the homestead is something more than, and different from, the $2,000 exemption against the claims of creditors." *Meisner*, 138 N.W. at 585. The court recognizes the distinction to this day. *See Chambers*, 963 N.W.2d at 55 (citing *Meisner* holding the homestead "is something more than the present worth of the exemption the homestead statutes allow."). The bulk of the act continues to read as an exemption of a single parcel of property, not as a personal exemption in an interest in property. *See, e.g.,* Neb. Rev. Stat. § 40-105 (allowing the claimant to "apply to the district court in the county *in which the homestead is situated* for an order to determine whether or not such lands or tenements, or any part thereof, are exempt as a homestead"); § 40-106 (requiring the court to determine the "value of the homestead"); § 40-116 ("If *the homestead* be conveyed by the claimant, or sold for the satisfaction of any lien...").

The debtors' argument requires the court to read § 40-102 as an exemption not in the homestead, but in the claimant's *interest* in the homestead. The Legislature knew how to use the term "interest", which it used in § 40-104 to refer to a singular homestead of a married person:

> *[T]he homestead of a married person cannot be conveyed* or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses. *The interest of either or both spouses may be conveyed* or encumbered by a conservator[.]

§ 40-104. If the Legislature intended each of a married couple to claim a homestead exemption in their own one-half *interest* in marital property, it knew how to do so.

8

Most importantly, LB 964 did not change well-established and longstanding caselaw holding a parcel of property cannot sustain two homesteads, which change must have occurred to sustain the debtors' two exemptions.

> It is true that a homestead cannot be occupied jointly by two families so that both will have homesteads therein. Also, it is true that if a tenant in common claims a homestead, he must occupy the property to the exclusion of his cotenants.

*Luenenborg v. Luenenborg*, 259 N.W. 649, 652 (Neb. 1935); *see also Berggren*, 241 N.W. at 545 ("It is elementary that: 'A person cannot at the same time have two homesteads, nor can he have two places, either of which at his election he may claim as his homestead.') (citation omitted). Stacking two $60,000 exemptions is also not in accord with the caselaw history of homesteads. "[W]hen legislation is enacted which makes related preexisting law applicable thereto, it is presumed that the Legislature acted with full knowledge of the preexisting law and judicial decisions of the Supreme Court construing and applying it." *State v. Urbano*, 589 N.W.2d 144, 157 (Neb. 1999).

The Nebraska Supreme Court affirmed the nature of a homestead in 1989:

> Analogizing to the rule that "[a] person cannot have two homesteads, nor can he have two places either of which at his election he may claim as a homestead," *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 330, 352 N.W.2d 921, 924 (1984), we note that two separate homesteads cannot exist in the same parcel of land.

*Landon,* 438 N.W.2d at 760.

Although one parcel of property cannot support two homesteads, some confusion appears to have been caused in the cases where the Nebraska Supreme Court held a co-tenant is not prohibited from claiming a homestead exemption.

> We have held under this act that a homestead may be claimed in land held in joint tenancy, specifically stating that the act did not specify or define the character of the ownership or interest in lands which is necessary to support the homestead right, and that any estate or interest was sufficient which gave a right of occupancy or possession accompanied by requisite occupancy.

*Edgerton*, 36 N.W.2d at 260. The confusion occurred in 1997 when the bankruptcy court in *Matter of Roush* followed *Edgerton*, allowing a co-tenant to claim a homestead exemption in property, but ignored *Landon*, blessing two homesteads in one parcel of property.

9

> The fact that single unmarried individuals with dependent children can, in effect, invoke two homesteads with respect to the same real estate under circumstances in which they could not assert dual homestead exemptions if they were married to each other, is irrelevant. The legal issues in the cases now before me would be the same if each of the debtors, Robert M. Roush and Mary K. Fisher, were married to third parties, so that the real estate was occupied by two families each comprised of a husband and a wife and children. I have no doubt that under the existing law, as declared by the Nebraska Supreme Court, each of the families would be entitled to claim the homestead exemption.

*Matter of Roush*, 215 B.R. 592, 595 (Bankr. D. Neb. 1997).

The debtors argue they could file separate bankruptcy cases. And the court's opinion in *Roush* allows co-tenants to each claim a homestead in one parcel of property. Therefore, the married couple could do the same. But Judge Saladino, writing for the bankruptcy court in *In re Uhrich* subsequently recognized the inconsistency between *Roush* and *Landon*.

> The Court recognizes that the Honorable John C. Minahan in *In re Roush*, 215 B.R. 592, 594–95 (Bankr.D.Neb.1997), found that single, unmarried individuals with dependent children can each claim a homestead exemption in their respective interests in jointly owned property. While the underlying facts in *Roush* are not entirely clear, it appears that each of the homestead claimants had his or her own children and that there were two separate families living in the jointly owned home. Since the present cases do not involve two separate families, *Roush* is distinguishable and the Court will leave for another day whether *Roush* can be reconciled with Nebraska Supreme Court decisions such as *Landon v. Pettijohn*.

*In re Uhrich*, 355 B.R. 783, 790 n.2 (Bankr. D. Neb. 2006).

Despite the *Roush* court's lack of doubt in 1997, the Nebraska Supreme Court to this day continues to refer to "exclusive" occupancy regarding a homestead exemption in property owned by tenants in common. *See Chambers*, 963 N.W.2d at 54–55 ("We have explained that any interest in real estate, either legal or equitable, that gives a present right of occupancy or possession, followed by exclusive occupancy, is sufficient to support a homestead right therein."). It also has not backed down from the long-standing proposition a parcel of property cannot sustain two homesteads.

Based upon the foregoing, it does not matter whether the debtors filed their case as a joint case or contemporaneous separate cases. In the case of a married couple,

only one homestead is available. To the extent *Roush* could be read to allow a married couple two homesteads, it is overruled.[2]

IT IS ORDERED: The Chapter 13 trustee's objection to exemptions is SUSTAINED.

Dated: February 7, 2024

BY THE COURT

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge

---

[2] We will continue to leave to another day "whether *Roush* can be reconciled with Nebraska Supreme Court decisions such as *Landon v. Pettijohn*" as it pertains to two co-tenants who contemporaneously file bankruptcy.